Shauck, J.
Some illumination of the subject discussed by counsel may be derived from a brief review of the history of the state’s dealing with it. It being permitted by the first constitution of the state, a license law was enacted authorizing *137 the sale of intoxicating liquors to be drank on the premises where sold, and such sale by persons not licensed was prohibited. The payment of a license fee was required and such further restrictions were imposed as to limit such traffic to the bars of taverns, then existing in the cities and villages, and, owing to the slow modes of travel then in vogue, in considerable, numbers along the thoroughfares of the state. The practical operation of this system encountered hostility from two widely different sources. Those who manufactured intoxicating liquors, or dealt in them, asserted that it was unjust that their business should be subject to an imposition of that character which was imposed upon no other business; and those who were opposed to the activities and the influence of the tavern bars came to regard the license as the cause of the evil which they contemplated. In time these widely separate opponents, concluding to match wisdom, united in placing in the constitution of 1851 the following provision: “No license to traffic in intoxicating liquors shall hereafter be granted in this state; but the general assembly may, by law, provide against evils resulting therefrom.” Although it may not have been then stated in terms, it is consistent with subsequent legislation and adjudication to say that by this provision the traffic which had been licensed was brought within the police power of the state, and that subsequent legislation upon the subject was restrained only by those limitations of the constitution which apply to the general exercise of the police power. That this view was ;then taken appears from. the fact that promptly upon *138 the official announcement of the ratification of the new constitution, on May 1, 1854, the general assembly passed an act entitled “An act to provide against the evils resulting from the sale of intoxicating liquors in the state of Ohio,” the first section entirely prohibiting the sale of intoxicating liquors “to be drank in, upon, or about the building, or premises where sold, or to sell such intoxicating liquors, to be drank in any adjoining room, building or premises, or other place of public resort connected with said building.” Exceptions were subsequently made in favor of the owners of orchards and vineyards, but it is believed that no exception recognized any limitation upon the authority of the general assembly to legislate upon the subject, except the limitations upon the exercise of the police power and the express denial of the power to license. Upon these changes in the organic and statutory law of the state there appeared the saloon — a place not a tavern bar — where intoxicating liquors were sold to be drank upon the premises where sold. A generation saw the prohibited traffic in its development outrun the general activities of the state. Then further attempts were made to restrict saloons by taxation and by local option provisions, the state-wide prohibition being repealed, although its validity had been upheld. The validity of the act of May 1, 1854, and of much of the succeeding legislation has been challenged as being merely sumptuary legislation violating guaranteed personal liberty and rights in property, but all of the legislation has been maintained unless it offended in one of the respects already indicated, it being *139 regarded as coming within the police power because it operated to restrain business which may injuriously affect the public.
One of the laws so passed was that for whose violation the fines and costs involved in the present cases were adjudged against the persons conducting the unlawful business. In these suits to enforce the fines and costs as liens upon the property where the unlawful business was conducted, though owned by others, the petitions expressly ■count on Section 6107, General Code, which provides that “Fines and forfeited bonds resulting from the violation of local option laws prohibiting the sale of intoxicating liquor as a beverage shall attach and operate as a lien upon the real property on or in which such unlawful act was committed.” This section, being in aid of the prohibiting legislation by extending liability so that fines may be actually collected, should be regarded as to its validity and meaning as within the same considerations which affect the prohibiting legislation. Not only do the petitions count upon this section, but its terms seem to exclude the application to fines resulting from the violation of local option laws of all other statutory provisions relating to fines for the violation of other laws.
Counsel for the plaintiff in error deny, the validity of this section upon the ground that although both petitions allege the owner’s knowledge ■of the unlawful conduct of the business on their premises, the terms of the statute in their natural meaning embrace cases in which the owner • is without such knowledge; that in such cases the *140 provision would’ operate as an unreasonable restraint upon the enjoyment of property and that the court may not by construction limit the act and apply it to cases showing knowledge. .
In one of these cases the circuit court sustained a demurrer to an original petition which did. not allege such knowledge, holding that the assessment could not be lawfully made upon property whose owner did not participate in the unlawful business nor acquiesce therein with knowledge. We assume the correctness of that decision.
In support of the conclusion that we may not limit the terms of this statute by rejecting that portion which applies to cases not comprehended in the cases we are considering, and applying that portion in which these cases are comprehended as though the legislature had so limited the section by its terms, it is said that we should be engaged in the forbidden exercise of legislative power. But the legislature has not failed to exercise its power to provide for the lien to the extent of embracing the present cases. Thé basis of counsel’s complaint is that it has legislated too much. The cases cited in support of the contention of counsel admit of two pertinent discriminations. If an act is void because in violation of constitutionally required uniformity, and is made so by its exceptions from the general terms which it employs, the court may not relieve the act of its infirmity by extending its general terms to the excepted cases, and this for the obvious reason that as to the excepted cases the legislature has hot exercised its authority. Nor, if the legislature attempts in the same enactment to exercise *141 authority granted and authority withheld, may a court give partial effect to the enactment if the parts are so related as to indicate that no part of the act would have been passed but for the belief that, it would be effective in its entirety. Rememlering that proper constitutional interpretation regards the substance of legislation, and not its form, we may suppose that this section was enacted as two sections, one providing for enforcing the fine against the real property of an owner' who has knowledge of the unlawful act, and the other for its enforcement against the property of one who is without such knowledge. It would scarcely be thought that the invalidity of the latter section would affect the former. Since the cases of an owner who has the knowledge and one who is without it are entirely separate and distinct as to the reasons prompting legislative action, the section seems clearly to fall within the doctrine of the numerous .cases in which statutes have received a'restricted interpretation in order that they may not exceed constitutional limitations.
Judgments affirmed.
Nichols, C. ]., Johnson, Donahue, Wanamaker, Newmán and Wilkin, JJ., concur.